Ms. Hodge. Yes, may I proceed? Please proceed. Thank you. Good morning and may it please the court. I'm Senior Assistant Attorney General Pat Hodge and I represent the appellants in this case who include Cindy Gillespie, the Secretary of the Arkansas Department of Human Services. Your honors, at the heart of this case is the appellee's contention that DHS appellants violate their due process rights because Arkansas's AR Choices Medicaid waiver program lacks perfection, but perfection is not a constitutional standard and is not required. The imperfections that appellees maintain violate the due process clause are an allegation that a fraction of AR Choices beneficiaries experienced an inadvertent but temporary interruption in their benefits while awaiting an administrative appeal and second, they advocate for a perfect notice of reduction in benefits so perfect in its form that one like it has never been recognized by the U.S. Supreme Court or a decision out of this circuit. Counsel, this is Judge Smith. Whether they're seeking perfection I think is not something we're we're empowered to look at. What we're wanting to see is if it meets the standard of due process under the federal constitution which requires a reasonable opportunity of notice and hearing and the question is has the system that's been produced in Arkansas and that operates in Arkansas, does it operate in such a way that people are deprived of rights guaranteed under the federal constitution without a prior notice and a reasonable opportunity to contest. That's I think what we're actually trying to decide and the problem is not only has this happened before but the concern is can this continue to happen under this same system and so particularly with respect to I don't know what's transpired since the original facts of the case but it seems the allegation is that there's a possibility that the deprivation she suffered was only was remedied promptly because of the intervention of counsel and that same in this case are extremely vulnerable individuals receiving care for receiving benefits for daily care and being deprived of those benefits for even brief periods of time could have very significant impacts upon their well-being. So if you would address what the state views as its attempt to avoid individuals not having notice prior to termination of their benefits and having an opportunity to respond to termination before it occurs. Thank you your honor. I think your honor has raised three distinct issues. One there is not a question of whether or not any appellee in this case had ever received notice. That's a separate legal issue that I will address. I'll dovetail to the specific question in this case with respect to Dearmore was whether or not the notice she received apprised her that she was undergoing a reduction in benefits and the answer to that question is yes. Your honor ask about does the notification require more than just a notice that you are having your benefits reduced. Doesn't it also require an explanation as to why and if so I couldn't read those numbers on the back of that notification and have any clue as to how that matrix worked out to get to the answer. It didn't really tell me why the reduction took place and is that a problem? It's not a problem and let me take two steps back if I may and answer the question this way and do this. The legal issue in this case that entitles DHS officials to a judgment in their favor is one of both qualified immunity and sovereign immunity and I want to principally deal with qualified immunity in this case in light of the Supreme Court's most recent decisions in City of Tahlequah Oklahoma versus Vaughn because those cases read together established three legal principles that guide this court's decisions before we even get to those questions in determining whether or not qualified immunity applies and number one is that the appellees have the burden of identifying for this court United States Supreme Court precedent that places the questions that your honors are asking beyond dispute. Those cases have to come directly for the Supreme from the Supreme Court in order to establish 1983 liability otherwise they aren't clearly established and the facts from those cases if appellees ever identified them have to be so specific factually similar and specific in context that it is beyond dispute that any appellant in benefits violates the due process clause or that that task in our spreadsheet was insufficient to apply to Ms. Dearmore for example that her benefits were being reduced from 143 hours to 103 hours and your honor there is not a single case cited by the appellants that put these two questions beyond dispute and so qualified immunity bars this action against all individual capacity defendants both for the alleged systematic temporary interruptions and for the specific notice provision the two U.S. Supreme Court cases that have been identified for the court are Goldberg versus Kelly and O'Bannon and neither of those cases deals factually with the two legal issues here and that is whether or not if there are hiccups along the way there is no dispute that appeals for AR choices benefits the issue is whether or not six interruptions since January of 2019 constitutes a systematic deficiency of a constitutional magnitude and there is no United States Supreme Court decision out there that said DHS appellants in either their official or and that is why I started the argument the way I did it respectfully Judge Smith and that is the legal question Goldberg's decision is markedly distinguishable because their New York's express policy was to interrupt the benefits intentionally after a preliminary review and restore the benefits only after the administrative appeals process that's not the respect to whether or not an allegation of systematic deficiencies on their own could ever constitute a due process violation the United States Supreme Court's decision in Rizzo versus good says no there the appellees raised the issue of whether or not systematic deficiencies in the citizen complaint process regarding police brutality could ever give rise to a constitutional violation and award and require prospective injunctive relief and there the Supreme Court said no that the appellees had to identify a specific and deliberate plan for the purpose of violating the appellees constitutional rights otherwise they weren't entitled to prospective injunctive relief so here the individual capacity appellants are entitled to qualified immunity because there simply are no cases that put them on notice that these errors would subject them to liability under 1983 I think it's important to note that both sides have identified cases from all over the country 6th circuit 9th circuit Alaska Washington and all of those cases take different views and have different analysis about what's required for either a due process hearing or a noted all of them certainly recognize in general a due process right but the Supreme Court in bond has admonished circuit courts that you can't identify the constitutional right at a very general level that is why the specificity requirement is so important and since there are no cases specifically dealing with a task and hours spreadsheet like the one DHS uses or this allegation of systematic deficiencies then sovereign immunity and qualified immunity both bar this case I do want to note that the single case that appellees highlight from the 6th circuit that comes close to approaching an allegation of systematic deficiency is too dissimilar to have any precedential value in this case that's the kahoot case there the error rate was 93 percent here the error rate is at most 30 over a four-year period and at best six over a two-year period a 1% error rate and so certainly there are no cases that indicate that a 1% error rate constitutes a due process violation really at best the complaint raises negligence but gross negligence has never been sufficient to satisfy a constitutional violation you know this is that qualified immunity is designed to protect in issues of gray areas where there is no allegation that there was an intentional violation of the law then public officials are not are given leeway to make the best judgments that they can make with the facts presented to them um to answer your question judge smith about whether or not miss elder faces some future harm that goes directly to article 3 standing and this court's decision in webb versus smith which is cited in the brief says the answer to that question doesn't you know establish liability in this case this court would have to undergo at least five levels of speculation in order to determine whether or not or to conclude that miss elder is at risk of an immediate future risk of harm and this court has said both in frost and webb that you won't engage in that speculation i think you're very accurate on the law the only concern is because the system seems to be largely automated and that the periodic review comes up i suppose i think it's annually um that if the system operates as it has in the past uh the potential or possibility or likelihood of repetition is is still there uh what what gives assurance uh that this occurrence is not likely to recur there are two things that give this court assurance one um you still have to engage in some speculation you have to speculate that in a year the system will be the same automated system that in a year that miss elder would be eligible for the system that in a year she would be a set and and have an adverse action and that in a year she would seek an appeal and that in a year her her benefits would be temporary interrupted you don't have those questions answered in the complaint you have to speculate and that's why there is no article 3 standing but um equally important as the government put something in the record to indicate that there are differences that that wouldn't make recurrence uh either impossible or improbable i mean the the response that i just gave demonstrates that the record doesn't support you the law says you'd have if you have to speculate to get there then at least haven't met their article 3 standing requirement the the second issue and i see i'm at my rebuttal time i'm sorry judge judge erickson has a question but but you're saying that uh uh the fact that the program is unchanged and it has the 10-day parameter and it is apparently unchanged uh that that it would still be speculative uh to say that that program could systematically then create the same issue over and over again what i'm saying is what is speculative is whether or not miss elder would actually be a part of the program whether she would she would subject be she would experience an adverse action and whether upon experiencing that adverse action she would suffer a temporary interruption in her benefits about hundreds of other beneficiaries have not suffered you know that the complaint makes a point that there have been hundreds of administrative appeals since 2019 but they have only brought forward 30 in four years or six in in in two years and so the court can can conclude that this is not a guarantee the other thing that that we mentioned in our reply brief um because the appellees point to certain policy manuals in their complaint and in their briefing that the current policy manual indicates that all dhs clients including those automatically have benefits continued through the end of the administrative appeals process and so there is no likelihood that she would face she or any other appellee would face um uh uh inadvertent interruption in her benefits your honors i am out of time i ran into my rebuttal answering your honor's questions i would be happy to continue answering questions because i'm not sure jay smith if i got to answer all the points you asked at the beginning of the presentation uh you you've answered my questions and i appreciate it we we asked you quite a few questions um even though your time's expired uh after the uh appellee's response uh the court will accord you a minute to uh supply rebuttal thank you your honor i appreciate it all right good morning your honors good morning your honors my name is kevin de levon i work for legal aid of arkansas and represent the appellees i wanted to acknowledge my co-counsel on the brief mr hawkins who's likely in the public uh listening in um your honor there's many things to address i think first is the qualified immunity standard that the state puts forward is totally inappropriately um inappropriate and overly specific um of course the two cases that uh the state cited in their reply brief which were not in their initial brief and we didn't have a chance to respond to are fourth amendment cases and the supreme court's been clear that in the fourth amendment context specificity is especially important because of the nature of the decisions that law enforcement officials have to make in the moment of course this situation features none of that sort of in the moment fluidity these are calculated deliberate policy choices that have been made over the span of several years and so that level of specificity isn't required even so this court said in bonner which was quoted in our brief that of course qualified immunity can be defeated in novel factual circumstances and similarly this circuit has said that general constitutional rules already identified in decisional law that apply with obvious clarity to the specific conduct can be sufficient to overcome qualified immunity your honors that was not cited in my brief it is shekelton versus eichenberger 677 f3d 361 quoting from various supreme court cases including hope v pelzer and taylor v rio us the main point of course is that overly over specificity is not required here you have the generally established constitutional due process principle that notice must be adequate everybody who's opined on this notes that notice must explain in plain informative language it must be complete all of these things and the notice here is so obviously deficient that it doesn't rise to those standards the notice has to explain decisions with respect to the process that the state uses the state uses two components one is setting an individual service budget and the second is using that task and hour spreadsheet that was referred to before there is nothing in the notice that talks about how you get at the budget or how the budget plays into the ultimate decision to reduce miss dearmore's hours it's totally absent from the notice and then of course there's nothing that explains how the budget and the task and hour standards work together to arrive at the reduction in miss dearmore's hours and that's particularly noteworthy because for several years the state has said miss dearmore's entitled to 143 hours per month of care and now it's saying she's entitled to 103 so after determining for several years that you're entitled to one level what justifies the reduction and there's nothing in the notice that explains that with reference to the system that dhs is using so there's no level of specificity under which that notice is acceptable even so there are all the cases in the medicaid home and community-based care context that ms hodge referred to and that are referred to in the briefs that all explain essentially that no matter whatever system you're using you have to explain it and so i think the notice is so obviously deficient that there's no question there's no level of specificity under which counsel would you be appropriate would you address miss hodge's concern that the system overall is functioning at a high level of adequacy and that there are relatively a small percentage of cases like the the appellants that resulted in any reduction in benefits um and and none that haven't been remedied certainly your honor um the state is misleading they use this one percent figure that's misleading what they're doing is taking the 30 or 40 cases that legal aid has identified in the complaint and they're saying that those are all the cases in four or five years that have ever had this problem out of all the appeals that now that's that's funny math of course because dhs itself doesn't keep statistics on the error rates or the number of people who receive continuing benefits when they timely appeal they're just taking what we've alleged to be a proxy for everything and that's not appropriate we haven't said that we have that level of knowledge so that's misleading the other reason it's misleading is that the complaint alleges in detail the mechanics by which the system is deficient so there's two ways essentially when you boil it down one is that dhs can do everything that they're supposed to do and still not complete the process in 10 days okay because it's just their complexes so their processes uh so involved with so many different players that it just can't be completed in 10 days the other way it's deficient is that sometimes the dhs officials don't do what they're supposed to do and then the process never gets completed and that's what happened for all three plaintiffs here it's how it's what happened with five other beneficiaries who identified in the complaint and those were items 183 to 187 where the same thing happened they appealed timely and never had their benefits restored until legal aid contacted dhs on their behalf so we have credibly out alleged that the system fails for everybody because of one or two of these kind of deficiencies and that the only people who ever receive continuing benefits are those that have somebody like an attorney or maybe a caregiver or a case manager who will intervene on their behalf and that's simply not tolerated by the due process standard so with regards to those systemic failings that helps also support standing now of course all the cases that the state cited where standing where the plaintiffs didn't have standing were all ones in which they didn't file suit while they were actually experiencing the harm here both elder and dearmore actually experienced the reduction when they filed suit and were only restored afterwards now mr taylor was restored a little bit before he filed suit but that was only after council contacted dhs so all of the folks were experiencing the harm or at least the results of the harm at the time of of filing the complaint and to the judges positions earlier about this repeating annually i think it's ms elder has been part of this program for many years ms dearmore has been part of this program for many years it's uh it wouldn't be reasonable particularly at the pleading stage to assume that they somehow are going to lose their eligibility over the next year and not be subject to reassessment using the same exact system that caused them to receive benefit cuts or become ineligible in the first time it's going to be the same system uh both it's assessing them and then when they experience adverse actions which they fled is that in dispute at all i mean is is is in dispute at all that the system has not been modified that there haven't been safeguards modifying process and procedure to ensure that notice meets a minimal constitutional standard i am not aware of any changes by the state that would go to those issues your honor is raising now this case is how i understand it this case is that the motion to dismiss stage is that accurate that's accurate your honor okay so uh had what what kind of discovery uh would you anticipate taking place if the case were to proceed beyond this stage well at that point your honor we have discovery about you know what everybody knew and when they knew it and what they did in response for their knowledge of course and then we have a discovery about whatever changes the system uh you know whatever the specific flaws of the system are uh and then we have discovery about you know what's happened since we filed um so i think all of those things are fair fair game for discovery and your honor i guess uh hodge referred to a policy manual that says that you know everybody who appeals uh who receives a our choices benefits will will have continuing benefits again that doesn't take care of the problem everybody already had the right to receive continuing benefits pending appeal so long as you appeal timely the problem wasn't the time frame solely as the plaintiffs cases show because they feel timely and they never got their benefits restored so whatever that policy manual change is and that is a that is a change um doesn't at all go to um what the situation was at the time the plaintiffs filed the case and it also doesn't go to the it doesn't undermine the the essential allegation that the system is deficient because of the mechanics not because of the entitlement to the continuing benefits so to speak uh mr. de layman the uh i think you misspoke you said that they never had their benefits restored doesn't the record reflect that everyone did eventually have their benefits restored but only after action uh on their part or their attorney's part pardon me your honor so the plaintiffs never had their benefits restored until we got involved exactly we believe pursuant to the deficiencies in the process that there are other people of which we are not aware that may never have had their benefits reinstated because the mechanics of the process um don't work your honors uh i guess in sort of closing if you're if you're again which would you address the uh are there can you cite us to any more specific to cases more specific to these facts that would indicate that qualified immunity should not protect the the defendants in this case something that that isn't at the high level of generality that the supreme court has warned us to to avoid certainly with respect to continuing benefits pending appeal i mean i don't think there's you know that's just a clearly established principle not only from goldberg but the regulations that require that it be done so i i think the fact that there's a regulation that dhs is subject to certainly establishes the clearly established nature of it as well as dhs's own policy manuals in terms of is is are those are those materials in the in the in the record i guess those specific rigs and and policy manual yes your honor those are all um those are all in the brief um that show that for continuing benefits for notice again you have the requirement that it has to be specific and clear to the individual in terms of specific cases there's a plethora i'm just dealing in the home and community-based care context there's the kw case out of idaho which is cited in the brief where they use a budget to determine home and community-based service service levels just like is is is done here and there the ninth circuit noted that the notice was deficient because it didn't explain how the state arrived at the budget and that's exactly one part of the component that we have here every other case that's cited you have even um the state's own case they put forward the wash the unreported washington state case kewl well in kewl the person got the assessment they got an informational sheet with the assessment that explained the criteria by which you're placed in each group they got a sheet that showed the specific factual findings unique to that individual including levels of detail like the reason your benefits are reduced is because you had an open lesion or you didn't have an open lesion that level of specificity um so those are just two of the cases another is of course is for instance a ninth circuit case would a case from the ninth circuit with fairly analogous facts uh be adequate notice uh for states in the eighth circuit yes your honor again i understand there are certain circumstances in which that might be debatable but here it's not you have not only that case and all of the associated case law and regulations that simply show that there's no way that you can think of notice like that which dhs used here is sufficient and dhs had a notice case that they lost just a few years ago in the eastern district which was jacobs v gillespie which we also litigated in which judge marshall said your notice is deficient you have to explain the outcome with reference to the assessment system you're using so dhs doesn't merit any leeway here especially when it comes to kind of the level of generality they both knew from existing case law and regulations as well as from their own experience that the notice that they gave ms dearmore was wholly deficient and i guess with that um your honor is the the thing i would like to draw your attention to if it hasn't already is of course this is a remarkably long complaint um but it's filled with dates documents reports meetings agency processes all sorts of concrete factual allegations that that's the context within which each individual's actions actions needs to be judged is that this is a complex process working over the agency over the course of several years whereby despite having repeated information that they were doing wrong they continued to flop that and that's kind of the principle in kahu the sixth circuit case about qualified immunity in terms of officials operating a complex system multiple officials involved a complex system that is depriving individuals of constitutional rights where the officials simply choose to do nothing they don't act they perpetuate and condone the status quo and that is the reason that the district court's decision should be affirmed and i thank your honors very kindly for the opportunity to argue thank you counsel ms hodge you'll need to unmute yes your honor um thank you for permitting me additional rebuttal very quickly there is no fourth amendment exception to qualified immunity specificity relates to qualified immunity which applies to all government officials and so the lack of cases addressing the specific facts here and the specific legal arguments require qualified immunity for all the appellants number two with respect to the notice and the task and our spreadsheet and this goes um judge erickson to your question that the plaintiffs are not entitled to a united states supreme court worthy they're entitled to know what the agency did be provided with that information and then be able to object to it at a hearing the spreadsheet said these are the issues we assessed this is the time we allocated and this mathematical calculation renders the amount of hours you're entitled to and with respect to the complaint mr delevin's argument leaves so much to to wonder about because there were the appellees were lost solely on speculation they are not entitled to do discovery in order to come up with a complaint sufficient to to satisfy constitutional standards their complaint doesn't allege plausible violations of the constitution if their complaint identifies only 30 individuals those are the facts that this court takes um and those facts don't bear out a systematic uh deficiency of a constitutional magnitude what about the 30 individuals and the state's view that would be like the military saying that's nearly collateral damage no your honor it's not worthy of concern um the system works pretty well and um and uh we can't be too concerned about it no your honor i definitely don't want to leave the impression that the state is not concerned leaving with me at least uh it seems like anything goes in arkansas no your honor definitely these interruptions were inadvertent we certainly uh mentioned the numbers because those are the numbers what did you do to guarantee that that won't happen again the system permits um let me can i want to answer your honor's first question about this case being an issue of collateral damage that is certainly not the state's position the state's position is that all ar choices beneficiaries receive notice and they are entitled to a hearing these interruptions are inadvertent and what the plaintiff's complaint points out is that some unknown or unnamed official uh may have inadvertently not moved uh the process along but that certainly is not the desire of secretary gillespie or any of the appellants in the system they're the the affilies are entitled to a hearing the system affords them the complaint acknowledges that once they request a hearing within 10 days they are entitled to a hearing that is dhs's desire that is the process that's put into place even the complaint acknowledges that some of these appeals can be processed as early i think the complaint says it's two days or the process can begin as early as two days or completed as early as three days and and what the 42 cfr i believe it's 423 say that appellants just have a right to request a hearing within a reasonable time not to exceed 90 days um and so that time is designated by dhs as arkansas's waiver program as 10 days but what we've acknowledged or what we've put for before the court on page nine of our reply brief is an adjustment in the policy manual that says continued throughout the administrative appeals process there's a little bit of a factual nuance before um the the appellees were required to indicate affirmatively a request to continue benefits now on page nine that references the adjustment in the policy which this court contains judicial notice of public records says that if the appeal is received timely the benefits automatically continue throughout that process and so so you are improving the system i take it the system has been approved yes your honor there's been an adjustment in the system thank you for your detailed answers can i ask i still have another question it's really about the jacobs case and what notice that may have given uh to you about what's required or to the transcript of uh of uh judge price marshall's um uh decision it's pretty detailed it it says what the problem is exactly what needs to be that there needs to be some explanation that's intelligible to a person who receives the notice right and he goes through and explains why he under the prior system there was a problem right now um as he said at the end he said i'm going to enter a much more conclusory order and in fact the order itself is quite conclusory uh so the real meat and potatoes of it is in this transcript but but um uh the uh uh the uh the uh mr delevin is apparently arguing that this was some this is a case and this is a case that is within the uh uh the the the the eastern district of arkansas and that that gave notice to uh the uh dhs of what the minimum requirements were why is that not true for a couple of reasons and thank you for the question judge erickson it has to be united states supreme court case it took force for 1983 liability and that doesn't seem quite true because there's a statute exception as well and uh clearly uh the circuit court can say we believe that this is now clearly established going forward and we bind people all the time not all the time but we do occasionally say we find a constitutional violation that was not yet clearly established but going forward it is right so it's not just the supreme court well the supreme court held in the rebus case that it was assuming for the purposes of 1983 that a circuit court decision could establish clearly established law but this is not even a circuit court case this is an eastern district case so the second point is even if the court were to consider the jacobs opinion it's distinguishable for several reasons one is not a circuit court decision uh dhs's position certainly as supreme court president but even if the court considered circuit court uh precedent this is not a circuit court decision judge martha was very careful judge erickson to note that this case the jacobson case jacobs case was being decided on its own facts um and that so he was careful to say that this is what i've been presented with in this case and it's for this case only the other very distinguishable fact is that was a different system i think apple leaves acknowledged that there was a rug formulation in a different algorithm so to the extent that that would even be precedential it's not factually similar and it's not presented in the same context as the ar choice program that's using the aria system the other thing that judge marshall said and we cite this in our briefing to mr delevin is that perfection is not required uh in a medicaid system and he recognized that the other um important detail about the jacobs decision is that there wasn't this detailed fact in our spreadsheet that particular component of the notice provision was not before judge marshall and this is dhs's attempt to provide additional information as opposed to conclusory statements like your benefits have changed you know this is not like those cases the apple leaf site where there's a single sentence that says here's your notice that your budget has changed um here's notice that your services have changed based on an assessment but no assessment is attached here there is an assessment that says we assessed you in these categories we believe your need is category one through three and based on that need we've afforded you this mathematical calculation of benefits but there's just a numeric rubric there and i believe your briefing says that the nurse is supposed to explain and answer any questions right uh about what that means is that really an explanation that anyone can understand or comprehend sufficient to make even a determination whether or not you should appeal yes your honor and i think in the record what when this court should respectfully consider in the record is that when miss dearmore appealed and when miss elder appealed i think i'm getting that police corrected they checked the box and said i am appealing because my benefits are inadequate or they have been reduced i think their very own statements put this question beyond dispute that they were aware upon having a conversation with the nurse and upon receiving receiving written that their benefits had been reduced and their allegation or claim was they are not adequate to cover my needs that is what due process provides we could debate and courts have all over the country about the the specificity of what that notice requires but the due process clause says she just needs to know what happened and she needs to be able to lodge a complaint and she did that she received the notice and she said this is not enough and i would like an appeal to address this and she'll be given an opportunity at that point the medicaid provisions or statutes allow her to receive records so that she can champion her case in the administrative appeal but she is not entitled respectfully to that information she doesn't need that on the front end she just needs to know what happened and be able to make an objection and that's what distinguishes this from those cited in other jurisdictions is that it's not a summary statement your benefits have changed the end she has you know been provided with some information to to say this is what happened and i have an objection and if we rely on the goldberg decision judge erickson this was this procedure was cited favorably there the supreme court said that an opportunity for a was the best way to handle this to have somebody a beneficiary be able to talk to a registered nurse about the affectment and then receive a written copy of that and then once she received that written copy be able to communicate to dhs i recognize my benefits have changed and it's my position that they are not enough as a matter of law satisfied due process in this case and requires a reversal and dismissal i'm happy to answer more questions i certainly appreciate the court affording me additional time to do so thank you your honors thank you miss hives thank you also mr deleben we appreciate both council's presentations to the court and the arguments this morning they've been beneficial and helpful in our process of evaluating the case and we'll continue to review the record and the material submitted render decision in due course council may be excused thank you thank you